CR. Those benches get hard after two-and-a-half hours. Yes, they do. This particular appeal in this case arose while the order from the district court transferring my client's CR to adult status was up on appeal. And it was discovered during that period of time that what we consider to be one of the key witnesses in the government's case in our hearing on the motion to transfer had very clearly committed perjury. He testified that he was an eyewitness and an earwitness to a shooting that occurred, and it was discovered that he was actually sitting in the Clark County Detention Center at the time. There's no contention that the government knew that this was perjury. Is that correct? Well, our contention is that if they didn't know, they should have known. I don't believe they did know. So what we really need to do is to take out that testimony and see what's left. And the district court judge said he did that. Well, I don't agree that that's the process, and I've found no authority that says that that is the process that should happen. Then what should the process be? The process should be that because of the nature of this person's testimony and how it was utilized and how the process should be. At the same time I filed a motion to reopen the transfer hearing, I filed a motion to dismiss the process. I believe it should be that it should go back and the government should start over again without the testimony of the perjurer and without the detective. Which comes right back to Judge Fletcher's point, which is the same thing. Well, I don't think it is the same thing, because I didn't have the opportunity to have a hearing in which I could address the factors for the motion to transfer, the 5032 factors, with the evidence from Mr. Hunt being taken out and how it was used by the detective. The district court heard you, took some testimony, as I recall, from a couple of people. The issue and the focus at that time was whether or not Mr. Hunt perjured himself, number one. And the effect of that perjury that it had on the detective, that's the case agent. And so I don't believe that the rereading of the transcripts by the district court judge gives me the remedy that I was seeking, and that is to be able to address those issues in front of the court on the motion to transfer. That's what I was asking for, is to reopen that hearing so that I could address those issues. And I wasn't given that opportunity. The focus of my motion was finding out that perjury had been utilized in the motion to transfer and bringing that to the court's attention, and then finally the government conceding that, in fact, they discovered that it had happened, and then having a hearing. And I think there is an issue of whether or not the government should have known when all of the factors as far as this person's incredibility are coupled with this court's opinion in Bernal-Obesi, which directs the prosecution and the investigators to take certain precautions when they're dealing with a criminal informant witness, which they were in this case, someone that called them from the jail and said they had information, to do at least a preliminary kind of investigation, like looking at the jail records when they were there talking to them. And so I don't ‑‑ I believe that was an incorrect finding by the district court judge, that there was no evidence that they should have known. Finding out about this guy was very easy. It was as easy as going to the computer and looking at the Clark County records. I mean, it's all you have to do to find out the history of this person and where and how we found out that he was in jail at the time was to go into the records of the Clark County Detention Center, and it showed that he was in jail. Yeah. Let me put this in sort of an odd way. But in some sense, Hunt was almost like a summary witness, you know. I mean, because he heard his stuff, and he came in and he just sort of summarized what he'd heard from other people. And isn't that sort of the problem? I'm going to get the names wrong, whatever. But there was all sorts of evidence that your client was there, had founded the separate gang, was a member of the C‑‑ whatever it is. Squad Up and the GPKs. The GPKs. Right. He had founded Squad Up. Several people put him in a conversation the day before with respect to the guys who were shot at. He had a gun. He was ‑‑ I mean, there's just a ton of evidence that shows his involvement in a sophisticated gang-related plan to ambush somebody else, all of which were balanced by the district court on ‑‑ in connection with your motion again. And he comes out the same way. So it's not as if Hunt were supplying the sole or even the most important part of the evidence. Well, I think he supplied one of the key pieces of evidence, and I think that's apparent. He makes a phone call from the jail and says, I've got information. I want to make a deal on December 4th. It was three days after that that the government finally decided they have the criminal enterprise evidence necessary in order to make this a federal case. And so I think it was the linchpin of the case. Otherwise, it would have gone to a state prosecution. He's the one that, if you look at his testimony, gives the government the evidence for a criminal enterprise. It's sequentially important, but I'm talking about substantively important in the district court's determination of whether transfer is indicated or not. Well, I don't believe that these other witnesses gave all the evidence on the criminal enterprise that you may believe they did, because that evidence came from Antwon Hunt that made the government's case a federal case. And I'll reserve the rest of my time for rebuttal. Okay. Surely. Mr. Brower. Good morning, and may it please the Court. Greg Brower, U.S. Attorney for the State of Nevada, on behalf of the government. Let me start by addressing the final point that was just discussed. Mr. Hunt's testimony, as flawed as it was. And let's keep in mind that Mr. Hunt actually got it right. He described everything just perfectly, as was corroborated by other witnesses. The only thing he got wrong was the fact that he was not there that evening. Minor detail. Exactly, Your Honor. But let's put Mr. Hunt's testimony in perspective. Mr. Hunt's. I want to put his testimony in perspective. I want to know what was there when his testimony was completely gone. Yes, Your Honor. In his testimony, he had nothing to do with the government bringing this case and nothing to do with the government's decision to seek transfer. And most importantly, to address your issue, at the end of the day, nothing whatsoever to do with the district court's ultimate decision to decide that the transfer motion was correctly granted to begin with. There was plenty of other evidence supporting the factors militating in favor of transfer. There were eyewitnesses to several of the important issues. The violence, the violent nature of the crime. The fact that firearms were used. Those facts came from the Washingtons, from co-conspirator Tolliver, from the intended target of the crime, Carter, from Detective Bodner's experience and observations at the crime scene. The fact that it was gang-related, again, came from several other witnesses, the Washingtons, Tolliver, Carter, Bodner. The fact that it was a battle over drug turf, same thing. That fact came from several other witnesses. The fact that the appellant played a leadership role in this crime came from several other witnesses. So at the end of the day, Mr. Hunt's testimony, flawed as it was, had no bearing whatsoever on the district court's decision. The district court, as you have read, decided that the proper way to deal with Mr. Hunt's testimony, and specifically the perjury, was to in effect reevaluate his decision to transfer while excising Mr. Hunt's testimony from his mental calculus. Upon doing that and upon giving the appellant a chance to call witnesses and cross-examine them at a hearing, the district court decided that there was no compelling reason to disturb his prior decision. He found that there was no new evidence, and if there was, it was immaterial to his decision. Now, the government contends, as you know, that the law, the case doctrine, should apply to this case. Sotomayor. That I don't understand because there's a changed circumstance. The law, I mean, I understand the point that once you get rid of Hunt's testimony, you're left with something, but it's totally changed. The calculus has changed at that point. So why would the district court be bound by its own prior ruling? Well, Your Honor, I think what we have is we have, of course, a prior panel of this Court deciding that the ---- But that included Hunt's testimony. Right. So if Hunt's testimony were material, you would not be in the position of being able to argue law of the case, would you? I think that's correct, Your Honor. Okay. So what difference does it make? I mean, you have to get beyond law of the case in order to decide that it wasn't material. I think it's a distinction without a difference. What we saw the first panel decide was the question of whether the district court abuses discretion in ordering transfer. And what is before the Court, I submit today, is the same exact issue. But on a different record. On a slightly different record, although ---- Well, quite different record. Yeah, let's ---- Granted, Your Honor. Let me move beyond the law of the case doctrine. You can win your case without ---- Understood, Your Honor. And let me return to the point, the main point, I think, of this appeal from the district court, that, as I said earlier, at the end of the day, the district court judge considered, reconsidered the transfer question without regard to the perjured testimony and came to the conclusion that transfer was appropriate. That was not an abuse of discretion and should be affirmed. Okay. Thank you, Mr. Carroll. Thank you. I guess the issue is of what the proper remedy should be. I think we've ---- there was agreement that Mr. Hunt was a material witness at the initial motion to transfer, that his testimony was important to the detective, the case agent that testified. And he testified about issues including the criminal enterprise and the facts of what happened. And the fact that the entire record, in my opinion, is permeated by the perjury of Mr. Hunt, that it goes beyond just the words that he said in his grand jury transcript that was introduced, the 50 pages of grand jury testimony that was introduced at the hearing, that, in fairness to my client, that the government needs to go back and to reevaluate the case. And in the context of a juvenile, they don't ---- you wouldn't go back to the grand jury, but you'd go back and reevaluate the case and file a new information. It's apparent from reading through these transcripts that the government's theory has changed over the last three years when my client was initially arrested, and it's gone from one particular enterprise to another enterprise. And so I think there are a number of reasons why the government should basically be told that they need to go back and start over without the perjury as being part of the record. Thanks. Okay. Thank you. Counsel, the matter just argued will be submitted and the court will stand adjourned.
judges: Fletcher, Rymer, Duffy